UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-CV-81913

DARRENISHA CONEY and IKERIA CORBETT,

Plaintiffs,

v.

COPELAND HOLDINGS, LLC

Defendant.

_____/

CH SECURITY SERVICES, LLC,

Third Party Plaintiff,

v.

EMS PROTECTIVE GROUP, LLC,

Third Party Defendant

_____/

### THIRD PARTY DEFENDANT, EMS PROTECTIVE GROUP, LLC'S, MOTION TO DISMISS COUNT I AND COUNT II OF THIRD PARTY PLAINTIFF, CH SECURITY SERVICES, LLC'S THIRD PARTY COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, EMS PROTECTIVE GROUP, LLC'S (hereinafter known as "EMS"), by and through its undersigned Counsel, pursuant to FRCP 12(b)(6) hereby files this, its Motion to Dismiss Third Party Plaintiff, CH SECURITY SERVICES, LLC'S (hereinafter "CH"), Third Party Complaint (hereinafter "Complaint") as to EMS and Incorporated Memorandum of Law and as grounds in support states the following:

1. The underlying Complaint in the instant case was originally filed on or about August 11, 2016 in Circuit Court in Palm Beach County by Plaintiffs, DARRENISHA CONEY and IKERIA CORBETT against Defendant, COPELAND HOLDINGS, LLC, now known as CH Security Services, LLC, the Third Party Plaintiff.

2. CH removed the case to the United States District Court for the Southern District of Florida, on the basis of diversity jurisdiction.

3. The underlying Complaint stems from an incident on August 11, 2013, wherein Plaintiffs assert they were attacked by unknown assailants which caused bodily injuries to both Plaintiffs while dining at a Waffle House store #258.  *See Complaint attached hereto as Exhibit "A." ¶ 3, 7.*

4. According to Plaintiffs' Complaint, Waffle House hired CH to secure the premises of multiple Waffle House locations. *See Exhibit "A." ¶ 3.*

5. Plaintiffs assert CH owed a duty to "provide security and keep the property in a reasonably safe condition from dangerous conditions" *See Exhibit "A." ¶ 8.*

6. The underlying Complaint asserts that CH breach its duty by:

   a. Failing to employ adequate[ly] trained security guards, patrols, procedures, equipment, personnel or other reasonable measures in the common areas;

   b. Failing to staff the security force to provide security;

   c. Failing to establish or enforce internal procedures and safeguards to protect invitees from criminal assault;

    d.  Failing to proper[ly] screen and hire employees who were charged with the responsibility of providing security; and

    e.  Failing to enact or enforce policies and procedures to assess security needs of the property, if any, on a regular and ongoing basis.

*Exhibit "A," ¶ 12, 17.*

7.  Also alleged is that on or about August 23, 2011, Copeland Holdings (the predecessor of CH) and EMS entered into a "Security Guard Services Agreement" whereby it is alleged EMS agreed to provide security services for the Waffle House store #258. *See CH's Answer, Affirmative Defenses, Demand for Jury Trial, and Third Party Complaint as Exhibit "B," ¶ 8.*

8.  On or about December 8, 2016 CH filed its Answer, Affirmative Defenses, Demand for Jury Trial, and Third Party Complaint, naming EMS as the sole Third Party Defendant.

9.  CH merely asserted that "[w]hen the incident at issue in the Plaintiffs' Complaint arose, EMS had a duty under the Security Guard Services Agreement to provide security services at the Restaurant." *Exhibit "B," ¶ 9.*

10. CH did not indicate how EMS breached it's duty to provide security services pursuant to the Service Agreement in the Third Party Complaint.

11. Nonetheless, within the Third Party Complaint, CH alleges two counts, contractual indemnification and common law indemnification.

12. Specifically, in Count I of the Third Party Complaint, CH asserts it is entitled to contractual indemnification from EMS for all acts of negligence, gross negligence, intentional misconduct, or willful misconduct in connection with its

providing security services to the Waffle House and pursuant to the terms of a "Service Contract."

13. Attached to the Third Party Complaint was an illegible copy of the Service Contract.

14. On or about February 23, 2017 upon request of the undersigned, counsel for CH provided a more legible copy of the EMS and CH service contract as well as other documents pertinent to the case at hand. *See a copy of the e-mail correspondence from CH's counsel and attachments as composite Exhibit "C."*

15. However, the two Service Contracts contain entirely different indemnity clauses and signature pages.

16. Moreover, the illegible Service Contract attached to Third Party Complaint, appears to be missing page 1, as evidenced by the labeling as "page 2" on the upper right hand corner of the first page of the document titled "SECURITY GUARD SERVICES AGREEMENT."

## <u>MEMORANDUM OF LAW</u>

When considering a Motion to Dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a Court must accept all well-pleaded allegations in the Complaint as true and view them in the light most favorable to the Plaintiff. *See Melleady v. Blake*, 2011 WL 6303245 (D.N.J. 2011); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002). Factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Stating a claim requires a complaint with enough factual matter, taken as true, to suggest the required elements. *Twombly*, 550 U.S. at

544. Moreover, a court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### A. COUNT I MUST BE DISMISSED DUE TO THE FAILURE TO ATTACH A LEGIBLE COPY OF THE CONTRACT.

Count I of the Third Party Complaint must be dismissed as it is predicated on an illegible and incomplete agreement which may not be considered by the Court.  Pursuant to FRCP Rule 8(a), a pleader must allege a short and plain statement of the claim showing the pleader is entitled to relief.   The Courts have built upon this rule, interpreting that the purpose of same is to provide fair notice of the claim and the grounds upon which it rests. *Harris v. Proctor & Gamble Cellulose Co.*, 73 F. 3d 321, 324 (11th Cir. 1996).  The court limits its consideration to the pleadings and exhibits attached thereto and incorporated into the complaint by reference. *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 n. 7 (11th Cir. 2006).  However, this Court should not consider illegible attachments.  In *White v. Denman*, the plaintiff provided and referenced to exhibits in his Complaint, but failed to provide a complete and legible set of the exhibits. 2013 WL 5407594 (M.D. Florida 2013). The Court stated it will not speculate as to the violations alleged in the illegible parts of the complaint and dismissed the portion of the claim predicated upon the illegible attachments. *Id.* at FN 6. The Court went on to say that the illegible portions would not be considered or even addressed by the Court. *Id.* at FN 3.

In the instant case, CH attached a copy of the purported Service Agreement to the Third Party Complaint.  The first page provided in the Service Agreement is actually noted as "page 2" on the document. In addition, the body of the agreement is illegible and difficult to decipher, so much so, it required the undersigned counsel to request a better copy from

CH's counsel. Further issue arises upon review of the newly provided copy, as it differs from the agreement which is attached to the Third Party Complaint. This Court should find as it did in *White* and that it will not speculate as to the violations alleged in the illegible parts of the Complaint and dismiss the portion of the claim predicated upon the illegible attachments, which is Count I of the Complaint.

### B.  COUNT I MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AS CH FAILED TO PLEAD A CONTRACTUAL DUTY OWED BY EMS.

The Court must dismiss Count I of the Third Party Complaint as CH failed to plead it's grounds for entitlement to indemnity or specify which warranties or duties EMS breached and would entitle CH to indemnification.  The Supreme Court of the United States has ruled that  "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As stated in the Third Party Complaint, CH and EMS entered into an agreement whereby EMS agreed to provide security services for the Waffle House Restaurant. *Exhibit B, ¶ 8.* The duties and responsibilities owed by EMS are governed by the applicable contract for security services.  In the underlying action which CH is seeking indemnification from EMS, the Plaintiffs assert negligence due to: failure to employ adequately trained security guards, procedure, personnel, or other reasonable measure; failing to staff the security force to provide security; failing to establish or enforce internal procedure to protect invitees from criminal assault; failing to properly screen and hire employees; and failing to enact or enforce polices and procedure to assess security needs of the property.  *Exhibit "A" ¶ 12, 17.*

Essentially, the basis of the underlying Complaint is negligent hiring and failure to establish proper procedure. However, CH only alleged in it's Third Party Complaint, that EMS had a duty to provide security services; CH failed to plead or cite to any provision in the Service Contract which evidences that EMS had any duties in regard to hiring guards or establishing security procedure. *See Exhibit "B" ¶ 9.*

As it related to the specific contractual terms (based upon our limited ability to decipher the illegible agreement), pursuant to the contract attached to the Third Party Complaint and therefore incorporated therein, the terms state EMS warranted that it's employees would have met and passed all the Company's requirements for the type of guard called for at the Property, the personnel would be qualified and have no criminal history or mental or emotional problems, and that the guards would be specifically qualified to provide and will adhere to the Waffle House Spigot Effect attached to the agreement. CH has failed to plead or cite to the provision of the Service Contract that EMS had a duty to employ adequately trained security guards, patrols, procedures, equipment, personnel or other reasonable measures in the common areas; to staff the security force to provide security; to establish or enforce internal procedures and safeguards to protect invitees from criminal assault; to properly screen and hire employees who were charged with the responsibility of providing security; or to enact or enforce policies and procedures to assess security needs of the property, if any, on a regular and ongoing basis. *See Exhibit "B."* The aforementioned duties are those which are asserted in the underlying Complaint which CH seeks indemnity for. *See Exhibit "A" ¶ 12, 17.* CH has only managed to plead that EMS had a duty to provide security services. *See Exhibit "B" ¶ 8.*

As such, CH has failed to plead any breach of the warranties or representations in the agreement, failed to specify which part of the agreement EMS allegedly breached, and failed to plead what act of negligence, gross, negligence, intentional misconduct or willful misconduct EMS's employees partook in. Pursuant to *Twombly* case, an initial pleading must contain grounds for entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* Therefore, Count I must be dismissed for failure to state a cause of action, as CH merely alleged there was an agreement which contained an indemnity clause.

## C. COUNT II SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION.

Count II should be dismissed for failure to state a cause of action for common law indemnification upon which EMS could be held liable. CH failed to properly plead the required elements to sustain a cause of action for common law indemnification.

To establish a claim for common law indemnification, CH must allege that (1) it is without fault; (2) its liability is technical and derivative and is solely due to the wrong of EMS; (3) EMS is with fault; and (4) there was a special relationship between CH and EMS. *See Houdille Indus., Inc. v. Edwards* 374 So. 2d 490, 493 (Fla. 1979).

CH failed to properly plead the required elements. CH stated EMS is wholly at fault as to the Plaintiffs' (in the underlying compliant) alleged injuries. However, the sequence of events which gave rise to the issue, as stated in the underlying complaint as well as the Third Party Complaint, were caused by non-party patrons who allegedly attacked Plaintiffs at a Waffle House. Therefore it is logically impossible for EMS to be solely at fault for the alleged harm which occurred. The elements for common law indemnity are conjunctive, as such, CH has failed to state a cause of action for common law indemnification.

8

For the reasons stated above, Count II of CH's Third Party Complaint should be dismissed for failure to state a cause of action for common law identification upon which EMS could be held liable.

WHEREFORE, Third-Party Defendant, EMS PROTECTIVE GROUP, respectfully requests this Court grant its Motion to Dismiss Counts I and II of the Third-Party Complaint, or any other relief this Court deems appropriate.

Dated: April 17th, 2017

Respectfully submitted,

VERNIS & BOWLING OF PALM BEACH, P.A.
Attorney for Third Party Defendant, *EMS Protective Group, LLC*
884 U.S. Highway One
North Palm Beach, Florida 33408
Telephone: (561) 775-9822
Fax: (561) 775-9821
E-mail: lwalsh@florida-law.com
Secondary: pbfiling@florida-law.com

By: _____
Lauren Maione-Walsh, Esq.
Florida Bar No.: 0072122

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 11, 2017, I electronically filed the foregoing documents with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronically Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

By: _____
Lauren Maione-Walsh, Esq.
Florida Bar No.: 0072122

9

## SERVICE LIST
## CASE NO.:16-CV-81913

Thomas Montgomery, Esquire
*Attorney for Plaintiffs*
One Southeast M.L. King Jr. Boulevard
Post Office Box 1510
Belle Glade, FL 33430
Telephone: (561) 996-6317
Facsmile: (561) 992-8274
Email: mnichols1985@bellsouth.net

Thomas J. McCausland, Esquire
Evan Roberts, Esquire
*Attorneys for Copeland Holdings*
Conroy Simberg, P.A.
3440 Hollywood Boulevard, 2nd Floor
Hollywood, FL 33021
Telephone: (954) 961-1400
Facsimile: (954) 518- 8660
Email: tmccausland@conroysimberg.com
Email: eroberts@conroysimberg.com

Filing # 45090466 E-Filed 08/11/2016 10:19:26 AM

                                        IN THE CIRCUIT COURT OF THE
                                        FIFTEENTH JUDICIAL CIRCUIT OF
                                        FLORIDA. IN AND FOR PALM BEACH
                                        COUNTY, FLORIDA.

                                        CIVIL DIVISION

                                        CASE NO:

DARRENISHA CONEY and
IKERIA CORBETT,

        Plaintiffs,

v.

COPELAND HOLDINGS, LLC,

        Defendant.

_____/

                        **COMPLAINT**

        **COME NOW** the Plaintiffs, Darrenisha Coney, individually and
Ikeria Corbett, individually, by and through their undersigned
attorney, and sue the Defendant, Copeland Holdings, Inc., and state
as follows:

                    **GENERAL ALLEGATIONS**

    1.    This is an action for damages which exceeds the amount
of Fifteen Thousand ($15,000.00) Dollars.

    2.    At all times material hereto, Defendant, Copeland
Holdings, LLC, a foreign corporation, provided security services
in Broward County, Florida, at 4840 Powerline Road, Oakland Park,
Florida, at a Waffle House.



NOT A CERTIFIED COPY

3.     Waffle House hired the Defendant and a copy of the contract is attached for the Defendant to provide service to secure the Waffle House store #258.

4.     At all times material hereto, Plaintiff, Darrenisha Coney and Ikeria Corbett, were residents of Palm Beach County, Florida and at all times material hereto lawfully on the property of Waffle House.

5.     This Court has jurisdiction for trial in the above captioned matter.

6.     Venue is proper in Palm Beach County, Florida because the Plaintiffs reside in Palm Beach County.

7.     On August 11, 2013, Plaintiffs, while lawfully on the Waffle House premises were jumped by unknown assailants causing bodily injuries to both Plaintiffs.

8.     At all times material hereto, Defendant owed a duty to Plaintiffs and others similarly situated to provide security and keep the property in a reasonably safe condition from dangerous conditions. The Defendant knew or should have known that Waffle House was a magnet for individual's intent on starting and recording fights at Waffle House.

## COUNT I

9.     Plaintiff, Darrenisha Coney, realleges paragraphs 1 through 8 above as if more fully set forth herein.

10. The assault on Plaintiff, Coney, was reasonably foreseeable by Defendant as a result of:

    (A)   Waffle House is a draw for criminal activity, including assaults, batteries and other violent crimes have occurred within the five years prior to the attack on the Plaintiffs;

    (B)   Defendant had actual or constructive knowledge of prior, similar criminal assaults or other criminal behavior on properties operated by Waffle House and was hired because of the ongoing problems at Waffle House properties.

    (C)   Defendant had actual or constructive knowledge of prior, similar, criminal assaults and other incidents or episodes on persons on Waffle House properties which is the subject matter of this lawsuit;

    (D)   Defendant knew of apparent efforts by people who use the social media sites to post the "Best Waffle House Fight Ever".

11. Because the criminal attack was reasonably foreseeable, Defendant possessed the legal obligation to exercise reasonable care for the protection of Plaintiffs from criminal attack by third persons.

12.   Defendant was negligent and breached the above legal obligation by, among other things:

    (A)  Failing to employ adequate trained security guards, patrols, procedures, equipment, personnel or other reasonable measures in the common areas;

    (B)  Failing to staff the security force to provide security;

    (C)  Failing to establish or enforce internal procedures and safeguards to protect invitees from criminal assault;

    (D)  Failing to property screen and hire employees who were charged with the responsibility of providing security; and

    (E)  Failing to enact or enforce policies and procedures to a assess security needs of the property, if any, on a regular and ongoing basis.

13.   As a direct and proximate result of such negligence, Plaintiff, Coney, was attacked and suffered personal injuries in the form of past and future bodily injury, pain and suffering, disability, physical impairment, mental anguish, loss of the capacity for the enjoyment of life, loss of earning capacity, medical expenses for the care and treatment of their injuries, inconvenience, and, in the alternative, an aggravation of any pre-existing conditions and constant humiliation.

**WHEREFORE**, Plaintiff, Darrenisha Coney, demands judgment for damages against the Defendant and further demands trial by jury.

### COUNT II

14.   Plaintiff, Ikeria Corbett, realleges paragraphs 1 through 8 above as if more fully set forth herein.

15.   The assault on Plaintiff, Corbett, was reasonably foreseeable by Defendant as a result of:

    (A)   Waffle House is a draw for criminal activity, including assaults, batteries and other violent crimes have occurred within the five years prior to the attack on the Plaintiffs;

    (B)   Defendant had actual or constructive knowledge of prior, similar criminal assaults or other criminal behavior on properties operated by Waffle House and was hired because of the ongoing problems at Waffle House properties.

    (C)   Defendant had actual or constructive knowledge of prior, similar, criminal assaults and other incidents or episodes on persons on Waffle House properties which is the subject matter of this lawsuit;

    (D)   Defendant knew of apparent efforts by people who use the social media sites to post the "Best Waffle House Fight Ever".

16.   Because the criminal attack was reasonably foreseeable, Defendant possessed the legal obligation to exercise reasonable care for the protection of Plaintiffs from criminal attack by third persons.

17.   Defendant was negligent and breached the above legal obligation by, among other things:

    (A)   Failing to employ adequate trained security guards, patrols, procedures, equipment, personnel or other reasonable measures in the common areas;

    (B)   Failing to staff the security force to provide security;

    (C)   Failing to establish or enforce internal procedures and safeguards to protect invitees from criminal assault;

    (D)   Failing to property screen and hire employees who were charged with the responsibility of providing security; and

    (E)   Failing to enact or enforce policies and procedures to a assess security needs of the property, if any, on a regular and ongoing basis.

18.   As a direct and proximate result of such negligence, Plaintiff, Corbett, was attacked and suffered personal injuries in the form of past and future bodily injury, pain and suffering, disability, physical impairment, mental anguish, loss of the

capacity for the enjoyment of life, loss of earning capacity, medical expenses for the care and treatment of their injuries, inconvenience, and, in the alternative, an aggravation of any pre-existing conditions and constant humiliation.

**WHEREFORE**, Plaintiff, Ikeria Corbett, demands judgment for damages against the Defendant and further demands trial by jury.

THOMAS MONTGOMERY, P.A.

*s/ Thomas Montgomery, Esquire*
THOMAS MONTGOMERY
Attorney for Plaintiffs
1 SE M.L. King, Jr. Boulevard
P.O. Box 1510
Belle Glade, FL  33430
561-996-6317
Florida Bar No:  148310
Email: mnichols1985@bellsouth.net

'May 13 2014 12:54PM  Executive Security Servic  6786242561                    P.2

## SECURITY GUARD SERVICES AGREEMENT

THIS SECURITY GUARD SERVICES AGREEMENT (this "Agreement") is made as of the 23th day of August, 2011, by and between COPELAND HOLDINGS, LLC, DBA Executive Security Services having its principal place of business at 700 Lake Mist Cove, Milton GA 30004 hereinafter ("CH"), and EMS Protective Group, hereinafter (Company), having its principle place of business at 1205 South Flagler Ave. Pompano Beach, FL 33060.

WHEREAS, CH has been retained by its client, Waffle House, Inc., (hereinafter Owner.), to provide security guard services to certain of its units in Fort Lauderdale, FL and the Company is licensed by the state of Florida as a private security guard service and is in the business of supplying qualified personnel (hereinafter "Guard, Guards, Unarmed Guards or Armed Guards"), Company hereby agrees to contract with CH to make secure the properties operated by the Owner and to promptly respond to requests of the Owner and CH regarding the securing of the property in accordance with the terms of this Agreement; and

WHEREAS, such personnel have been trained by the Company to maintain certain uniform standards of thoroughness in securing of the premises protected; and

WHEREAS, the Company has an established and effective working rapport with local law enforcement authorities; and

WHEREAS, the Owner desires the protection provided by the Company, thus obtaining the benefits of the highly specialized and effective service it offers; and

WHEREAS, the Company is willing and agrees to provide CH and Owner such services under the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein and other consideration acknowledged by the parties hereto, it is mutually agreed as follows:

1.    **SECURITY GUARD SERVICES AGREEMENT AND TERMS.**  The Owner hereby grants and the Company hereby accepts the right and duty to guard and make secure the property known as the Waffle House unit(s) 258, (the "Property") and to respond within a reasonable time to any and all reasonable security guard service requests made by Owner. Company agrees that with its verbal consent, confirmed by email, other units may be added to the Property and if so will be covered under the terms of this agreement. CH agrees that it will not engage any other security guard or patrol company for the Property while this Agreement is in effect. This right and duty shall commence on 8-26-2011, and shall remain in effect unless terminated by either party upon 72 hours written notice. Email correspondence shall qualify as such notice. Notwithstanding this provision, CH or Owner may terminate this Agreement at any time with cause. In the event of such termination, CH will pay the Company for all work properly performed hereunder up to the date of termination.  After such payment CH will have no further obligation or liability to the Company.  The provisions of Paragraphs 2 and 10 will, nevertheless, remain in effect.

2.    **WARRANTIES OF COMPANY.**  The Company represents and warrants that all Guards provided to Owner have met, passed and satisfied all of the Company's requirements for the type of guard called for at the Property, whether Armed or Unarmed. The Company further warrants and represents that Guards provided to Owner are qualified personnel under all applicable federal, state and local laws, regulations and ordinances and that all such personnel have no criminal arrests or convictions, mental or emotional problems known to the Company as evidenced by the employee's medical records or history and are otherwise fit for providing the contracted services. The Company further warrants and represents that the Guards provided to Owner are specifically qualified to provide the required type of guard services for venues such as the Property, and are familiar with and will adhere to the Post Orders (Waffle House Spigot Effect) attached to this agreement.

CERTIFIED COPY

May 13 2014 12:54PM   Executive Security Servic   6786242561                p.3

3. **TERM/NON-COMPETE**. Company agrees to respect CH's relationship with the Owner and not to compete with CH et the Owner or to do business with the Owner without working through CH during the term of this agreement and for a period of one (1) year following the termination of this Agreement. This shall apply to Owner's operations within the state of Florida.

4. **CONSIDERATION/SCHEDULE**. CH agrees to pay the Company the amount of $16.00 per hour for armed guards for their hours worked at the property according to a schedule mutually agreed to by Company and CH and Owner. Company's invoices will be payable within thirty (30) days of receipt. Initial scheduled hours and days that the sites will be manned are specified in a letter to Company. Company agrees that it will not subcontract the services described herein, but in the event that the Company contracts with another company as its agent to perform the services of the Company under this Agreement, the Company agrees that the Owner will have no obligation to pay Company or its subcontractor for such subcontracted service except as may otherwise be required by law.

5. **ASSIGNMENT**. This Agreement may not be assigned or transferred by the Company.

6. **INDEPENDENT CONTRACTOR**. The individuals used to perform such services as the Company shall provide shall be employees of the Company and not employees or independent contractors of CH or the Owner. The payment of Federal, State and/or local taxes, Social Security benefits, unemployment compensation taxes and wages shall be the sole function and responsibility of the Company.

7. **INSURANCE**. Prior to providing the Services, Company shall procure and maintain, at Company's own cost and expense, insurance as provided in this section against claims for injuries to persons or damages to property which may arise out of or result from the performance of the Services by Company, its Subcontractors or Sub-subcontractors, by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. The following policies and coverages shall be furnished by Company unless other policies and limits are agreed to in writing by CH. Commercial General and Umbrella Liability Insurance: Company shall maintain commercial general liability (CGL) and, if necessary, commercial umbrella liability insurance with a limit of not less than $1,000,000 each occurrence. If such CGL insurance contains a general aggregate limit, it shall apply separately to each location. CGL insurance shall be written on Insurance Services Office form CG 00 01 (or substitute form providing equivalent coverage) and shall cover liability arising from premises, operations, independent contractors, personal injury, contractual liability, broad form property damage liability, products-completed operations coverage and X, C, U (explosion, collapse, underground) hazards. Limits may be provided in a "layered" program, by means of primary and umbrella policies. Commercial Automobile and Umbrella Liability Insurance: Company shall maintain commercial automobile liability and, if necessary, commercial umbrella liability insurance with a limit of not less than $1,000,000 each accident. Such insurance shall cover liability arising out of any automobile, including owned, hired, and non-owned automobiles. Coverage shall be written on Insurance Services Office form CA 00 01, CA 00 05, CA 00 12, CA 00 20, or a substitute form providing equivalent liability coverage. If necessary, the policy shall be endorsed to provide contractual liability coverage equivalent to that provided in the 1990 or later editions of CA 00 01. Limits may be provided in a "layered" program, by means of primary and umbrella policies. Workers' Compensation and Employers' Liability Insurance: Company shall maintain workers' compensation insurance as required by the State in which the Services are being performed and employers' liability insurance. The employers' liability limits shall not be less than $100,000 each employee for bodily injury by accident or by disease. The policy limit for bodily injury by disease shall not be less than $500,000. The Commercial General Liability, Workers Compensation and Commercial Automobile Liability policies shall be endorsed to include the following: Copeland Holdings, LLC and Waffle House, Inc. as certificate holders. Company's insurance coverage shall be primary and not contributory insurance with respect to any other insurance or self-insurance programs maintained by CH, Owner, its partners, principals, officers, directors, agents, employees, representative, and insurers. There shall be no endorsement or modification of the CGL to make it excess over other available insurance; alternatively, if the CGL states that it is excess or pro rata, the policy shall be endorsed to be primary with respect to the additional insured. All insurance policies shall be endorsed to state that coverage shall not be canceled except after thirty (30) days prior written notice to Owner. If Company, for any reason, fails to maintain insurance

2



coverage, which is required pursuant to this Agreement, the same shall be deemed a material breach of this Agreement. CH or Owner, at their sole option, may terminate this Agreement and obtain damages from Company resulting from said breach. Company shall furnish CH with original certificates of insurance effecting coverage required under this Agreement. The certificates of insurance and endorsements for each policy are to be signed by a person authorized by the insurer to bind coverage on its behalf. All certificates of insurance are to be received and approved by CH before commencement of the Services. CH reserves the right to require complete, certified copies of all required insurance policies, including endorsements affecting the coverage required at any time.

8. **NEW ASSIGNMENT.** At the mutual agreement of Company, Owner and CH, an employee of the Company may be assigned duties other than those duties set forth by the Post Orders.

9. **ADDITIONAL OFFICERS.** Should a condition arise which calls for substantial increase in the number or degree of services initially estimated, the Company shall have a reasonable time within which to provide said services; and in the event of a strike, walkout, slow-down, or other labor dispute or difficulty by an employee of the Owner or employees of other companies on premises being serviced by employees of the Company, whether contrary to a labor agreement or not, the Owner and the Company agree to negotiate a change in rates as set forth in Paragraph 4 above.

10. **INDEMNITY.** Company will indemnify, CH and Owner from and against, without limitation, any and all claims, demands, liabilities, injuries, damages and actions (including attorneys' fees and other professional fees, if and to the extent permitted by law), which arise out of, are alleged to have arisen out of, relate to, or are in connection with, directly or indirectly, (i) the Company's breach of the warranties and representations in this Agreement; (ii) the Company's breach of this Agreement; and (iii) all acts of negligence, gross negligence, intentional misconduct or willful misconduct on the part of the Company's employees or agents, including Subcontractors and Sub-subcontractors, if any.

11. **REMOVAL OF GUARDS.** The Company agrees that upon request by the Owner, it will remove from service hereunder any Guard who, in the opinion of the Owner, is guilty of improper conduct.

12. **APPROVAL.** Execution of the Agreement by an authorized officer of each of the parties shall constitute offer and acceptance of its terms, binding upon the parties.

13. **MISCELLANEOUS.** Failure of either party to enforce any of the provisions of the Agreement shall not constitute a waiver of rights or subsequent breaches. This Agreement has been executed in conformity with and shall be governed by the laws of the state in which the Property is located. This Agreement shall inure to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties hereto the extent that assignment is authorized under this Agreement.

14. **ENTIRE AGREEMENT.** This contract and any documents incorporated specifically by reference represent the entire agreement between the parties and supersede any all prior oral or written statements or agreements. All promises, requirements, terms, conditions, provisions, representations, guarantees, and warranties contained herein shall survive the contract termination or expiration date unless specifically provided otherwise herein, or unless superseded by applicable Federal or State statutes of limitation.



NOT A TRUE COPY

3

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**Copeland Holdings, LLC**

By: _____
     Authorized Signatory

Title: President

Date: 8-25-11

**EMS Protective Group**

By: Emanuel Moor
     Authorized Signatory

Title: Manager

Date: 8/25/17

NOT A CERTIFIED COPY

4

1616227

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 16-CV-81913

DARRENISHA CONEY and IKERIA CORBETT,

  Plaintiffs,

v.

COPELAND HOLDINGS, LLC,

  Defendant.

_____/

CH SECURITY SERVICES, LLC,

  Third Party Plaintiff,

v.

EMS PROTECTIVE GROUP, LLC,

  Third Party Defendant.

_____/

## ANSWER, AFFIRMATIVE DEFENSES, DEMAND FOR JURY TRIAL, AND THIRD PARTY COMPLAINT

Defendant, CH Security Services, LLC (formerly known as Copeland Holdings, LLC), hereinafter "CH," through its undersigned counsel, hereby files its Answer, Affirmative Defenses, Demand for Jury Trial, and Third Party Complaint, and states as follows:

## ANSWER

1.    CH admits that Plaintiffs bring an action for damages exceeding $15,000.

2.    CH denies that it was operating under the name "Copeland Holdings, LLC" at all times material to the Complaint, and denies that it is a foreign corporation. CH admits the allegations in paragraph 2 of the Complaint only to the extent that CH subcontracted security


EXHIBIT "B"

CASE NO. 16-CV-81913

services to EMS Protective Group, LLC, regarding a Waffle House restaurant located at 4840 Powerline Road in Oakland Park, Florida.

3.      CH admits the allegations in paragraph 3 of the Complaint only the extent that Waffle House hired it to provide security to Waffle House store #258.  CH denies that the contract attached to the Complaint is the contract between CH and Waffle House.

4.      CH is without knowledge sufficient to admit or deny the allegations in paragraph 4 of the Complaint so, in an abundance of caution, denies same and demands strict proof thereof.

5.      CH states that this case has been removed to the U.S. District Court for the Southern District of Florida, which has diversity jurisdiction over this matter.

6.      CH denies the allegation in paragraph 6 of the Complaint.

7.      CH is without knowledge sufficient to admit or deny the allegations in paragraph 7 of the Complaint so, in an abundance of caution, denies same and demands strict proof thereof.

8.      CH denies the allegation in paragraph 8 of the Complaint.

### Count I

9.      CH re-alleges its responses to paragraphs 1 through 8, above.

10.    CH denies the allegation in paragraph 10 of the Complaint.

11.    CH denies the allegation in paragraph 11 of the Complaint.

12.    CH denies the allegation in paragraph 12 of the Complaint.

13.    CH denies it acted negligently.  CH is without knowledge sufficient to admit or deny the remaining allegations in paragraph 13 of the Complaint so, in an abundance of caution, denies same and demands strict proof thereof.

### Count II

14.    CH re-alleges its responses to paragraphs 1 through 8, above.

CASE NO. 16-CV-81913

15.     CH denies the allegation in paragraph 15 of the Complaint.

16.     CH denies the allegation in paragraph 16 of the Complaint.

17.     CH denies the allegation in paragraph 17 of the Complaint.

18.     CH denies it acted negligently.  CH is without knowledge sufficient to admit or deny the remaining allegations in paragraph 18 of the Complaint so, in an abundance of caution, denies same and demands strict proof thereof.

## <u>AFFIRMATIVE DEFENSES</u>

<u>First Affirmative Defense:</u> At all times material hereto, Plaintiffs Darrenisha Coney and Ikeria Corbett conducted themselves in a careless and negligent manner, and such negligence is a contributing and/or the sole legal proximate cause of the injuries and damages complained of by Plaintiffs.  Therefore Plaintiffs are barred from recovery against CH, or in the alternative, the damages for recovery should be reduced by the Doctrine of Comparative Negligence.

<u>Second Affirmative Defense:</u>  At all times material hereto, the alleged incident occurred above and beyond the foresight of reasonably prudent persons, and was caused by actions and/or omission of third persons and conditions beyond the control of CH.  Therefore, Plaintiffs are barred from recovery against the Defendant.

<u>Third Affirmative Defense:</u>  CH demands a set-off for any and all collateral sources paid or payable to Plaintiffs as a result of the subject incident.

<u>Fourth Affirmative Defense:</u>   Pursuant to *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993), and Fla. Stat. 768.81, CH reserves the right to any place non-party on the verdict form at trial as a joint tortfeasor, including the assailant(s), whose fault caused or contributed to the subject incident and/or the damages allegedly sustained by Plaintiffs.

CASE NO. 16-CV-81913

Fifth Affirmative Defense:  CH states that Plaintiffs' damages, if any, were caused by superseding and/or intervening negligence of other parties not under the control of CH, and as such, Plaintiffs may not recover against CH.

Sixth Affirmative Defense:   At no time following the retention of EMS Protective Group, LLC, did CH become aware of information that would suggest that it or its employees were unfit or posed a risk of harm to any third party.

Seventh Affirmative Defense:  CH asserts that it was without notice of any allegedly dangerous condition or dangerous propensities of visitors to the subject property, and as such, Plaintiffs' claims are barred.

Eighth Affirmative Defense:  CH alleges that the Plaintiffs are entitled only to recover the reasonable value of medical care and services resulting from any alleged damages caused by the negligence of another, and the reasonable value of medical care and services is limited to the amount accepted as payment in full for medical services by the person or entity that provided the decedent such services.

Ninth Affirmative Defense:   CH states as further affirmative defense that judgment shall only be entered on the basis of each party's percentage of fault and not on the basis of joint and several liability pursuant to Florida Statute 768.81.

Tenth Affirmative Defense:  Plaintiffs have failed to state valid causes of action against United.

Eleventh Affirmative Defense: The only duties and responsibilities owed by CH are governed by the applicable contracts for security services.

## **Demand for Jury Trial**

CH demands a trial by jury of all issues triable as a matter of right by a jury.

4

CASE NO. 16-CV-81913

## THIRD PARTY COMPLAINT

Third Party Plaintiff, CH Security Services, LLC (formerly known as Copeland Holdings, LLC), hereinafter referred to "CH," through its undersigned counsel, hereby files this Third Party Complaint against Third Party Defendant, EMS Protective Group, LLC ("EMS"), and states as follows:

### General Allegations

1.      The underlying action was brought by Plaintiffs, Darrenisha Coney and Ikeria Corbett.   By referencing Plaintiffs' Complaint, CH does not admit to any of the allegations contained therein.  A copy of the Complaint is attached hereto as Exhibit "1."

2.      Plaintiffs' counsel has demanded payment to each Plaintiff in excess of $75,000.

3.      On or about November 23, 2016, CH removed this case to the United States District Court for the Southern District of Florida.  Venue is proper in the Southern District of Florida.

4.      Plaintiffs allege that they were attacked at a Waffle House restaurant located at 4840 Powerline Road, Oakland Park, Florida (the "Restaurant").

5.      The restaurant is located in Broward County, Florida.

6.      At all times material, EMS was limited liability company licensed to do business in Florida.

7.      The Restaurant was known to the Waffle House chain, CH, and EMS as "Unit 258."

8.      On or about August 23, 2011, Copeland Holdings (the predecessor of CH) and EMS entered into a "Security Guard Services Agreement" whereby EMS agreed to provide security services for the Restaurant.  A copy of the Security Guard Services Agreement is attached hereto as Exhibit "2."

5

CASE NO. 16-CV-81913

9.      When the incident at issue in the Plaintiffs' Complaint arose, EMS had a duty under the Security Guard Services Agreement to provide security services at the Restaurant.

10.     All conditions precedent to the filing of this Third Party Complaint have been met, satisfied, or have otherwise been waived.

## Count I – Contractual Indemnity

11.     CH re-alleges its allegations in paragraphs 1 through 10, as if set forth herein.

12.     CH is entitled to contractual indemnification from EMS for any liability assessed against it arising from, *inter alia*, all acts of negligence, gross negligence, intentional misconduct or willful misconduct in connection with its providing security services to the Restaurant.

13.     Under the terms of paragraph 10 of the Security Guard Services Agreement, EMS is to indemnify CH with respect to the subject matter of the Plaintiffs' Complaint:

> [EMS] will indemnify, CH and Owner from and against, without limitation, any and all claims, demands, liabilities, injuries, damages and actions (including attorneys' fees and other professional fees, if and to the extent permitted by law), which arise out of, are alleged to have arisen out of, relate to, or are in connection with, directly or indirectly, (i) [EMS's] breach of the warranties and representations in this Agreement; (ii) [EMS's] breach of this Agreement; and (iii) all acts of negligence, gross negligence, intentional misconduct or willful misconduct on the part of [EMS's] employees or agents, including Subcontractors and Sub-subcontractors, if any.

See Exhibit "2" at ¶10.

14.     Based upon the Security Guard Services Agreement and the acts of negligence alleged in the Plaintiffs' Complaint, CH is entitled to contractual indemnification from EMS.

15.     The Security Guard Services Agreement requires EMS to pay CH's attorneys' fees and other professional fees, including costs, in defending the action brought by Plaintiffs.

WHEREFORE, CH demands that EMS indemnity CH for any judgment Plaintiffs recover against CH, and further require EMS to reimburse CH for its attorneys' fees and costs incurred in

CASE NO. 16-CV-81913

both defending the action brought by the Plaintiffs and in prosecuting this action against EMS, and

grant all such further relief this Court deems just and proper.

### Count II – Common Law Indemnity

16.     CH re-alleges its allegations in paragraphs 1 through 10, as if set forth herein.

17.     A special relationship was created between CH and EMS as a result of the

agreement for EMS to provide security services to the Restaurant.

18.     Plaintiffs allege in their Complaint that they were injured as a result of negligent

security provided at the Restaurant.

19.     EMS was providing security services at the Restaurant at the time of the incident

set forth in Plaintiffs' Complaint.

20.     CH had no knowledge or belief that EMS would perform its services negligently or

in a way as to cause damages to Plaintiffs if, in fact, Plaintiff's allegations are found to be true.

21.     CH is wholly without fault as to Plaintiffs' alleged injuries.

22.     EMS is wholly at fault as to Plaintiffs' alleged injuries.

23.     Any liability attributed to CH (which CH continues to deny) would be solely

vicarious, constructive, derivative, or technical and based upon the acts or omissions of EMS.

24.     Any injuries suffered by Plaintiffs would be due to the negligence of EMS, and

damages attributed to CH should be subject to indemnification by EMS.

WHEREFORE, CH demands judgment in its favor and against EMS for common law

indemnification, including attorneys' fees and costs, and all such further relief this Court deems

just and proper.

### Demand for Jury Trial

CH demands a trial by jury of all issues triable as a matter of right by a jury.

7

CASE NO. 16-CV-81913

Dated:  December 8, 2016                        Respectfully submitted,


                                                s/Thomas J. McCausland
                                                THOMAS J. MCCAUSLAND (0462217)
                                                tmccausland@conroysimberg.com
                                                EVAN ROBERTS (157790)
                                                eroberts@conroysimberg.com
                                                CONROY SIMBERG
                                                3440 Hollywood Boulevard, 2nd Floor
                                                Hollywood, FL 33021
                                                Telephone:  (954) 961-1400 Broward
                                                Facsimile:  954-518-8660
                                                Attorney for COPELAND HOLDINGS


## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I further certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


                                                  /s/ Thomas J. McCausland
                                                THOMAS J. MCCAUSLAND (0462217)

CASE NO. 16-CV-81913

CONEY v. COPELAND HOLDINGS, LLC
CASE NO: 16-cv-81913

**<u>SERVICE LIST</u>**

Thomas Montgomery, Esquire
<u>mnichols1985@bellsouth.net</u>
One Southeast M.L. King Jr. Boulevard
Post Office Box 1510
Belle Glade, FL 33430
Attorney for Plaintiff
Telephone:  (561) 996-6317
Facsmile:   (561) 992-8274
Attorney for Plaintiff
[via E-MAIL SERVICE]

**Lauren Walsh**

| | |
|---|---|
| **From:** | EXR-Evan Roberts <eroberts@conroysimberg.com> |
| **Sent:** | Thursday, February 23, 2017 9:53 AM |
| **To:** | Lauren Walsh |
| **Subject:** | Coney v. Copeland |
| **Attachments:** | fax000023835.pdf; fax000023836.pdf; Wafle House - August 2013 - Unit 258.pdf; Incident Report U258.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Lauren,

It was a pleasure speaking with you yesterday.  I'm attaching a copy of the contracts, incident reports, and EMS's invoice for work performed in August 2013.

Evan

**EVAN ROBERTS**
ASSOCIATE



(954) 961-1400
(954) 518-1224 (Direct)
(954) 518-8624 (Direct Fax)

3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021

HOLLYWOOD   WEST PALM BEACH   ORLANDO   FORT MYERS   MIAMI   PENSACOLA
TALLAHASSEE   TAMPA   JACKSONVILLE   NAPLES

**EXHIBIT**

**"C"**

__PRIVILEGE AND CONFIDENTIALITY NOTICE :__ This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C . 2510-2522 and may be legally privileged pursuant to Florida Statute  90.502. The contents of this e-mail message and any attachments are intended solely for the party or parties addressed and named in this message. This communication and all attachments, if any, are intended to be and to remain confidential, and it may be subject to the applicable attorney - client and or work product privileges. If you are not the intended recipient

of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail, delete this message and its attachments and, if the recipient is an attorney or legal assistant, please immediately comply with Florida Rule of Civil Procedure 1.285(b). Do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.  Although this E-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Conroy Simberg for damage arising in any way from its use.

## SECURITY GUARD SERVICES AGREEMENT

THIS SECURITY GUARD SERVICES AGREEMENT (this "Agreement") is made as of the 23th day of August, 2011, by and between **COPELAND HOLDINGS, LLC, DBA Executive Security Services** having its principal place of business at 700 Lake Mist Cove, Milton GA 30004 hereinafter ("CH"), and **EMS Protective Group**, hereinafter (Company), having its principle place of business at 1205 South Flagler Ave. Pompano Beach, FL 33060.

WHEREAS, CH has been retained by its client, Waffle House, Inc., (hereinafter Owner.), to provide security guard services to certain of its units in Fort Lauderdale, FL and the Company is licensed by the state of Florida as a private security guard service and is in the business of supplying qualified personnel (hereinafter "Guard, Guards, Unarmed Guards or Armed Guards"), Company hereby agrees to contract with CH to make secure the properties operated by the Owner and to promptly respond to requests of the Owner and CH regarding the securing of the property in accordance with the terms of this Agreement; and

WHEREAS, such personnel have been trained by the Company to maintain certain uniform standards of thoroughness in securing of the premises protected; and

WHEREAS, the Company has an established and effective working rapport with local law enforcement authorities; and

WHEREAS, the Owner desires the protection provided by the Company, thus obtaining the benefits of the highly specialized and effective service it offers; and

WHEREAS, the Company is willing and agrees to provide CH and Owner such services under the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein and other consideration acknowledged by the parties hereto, it is mutually agreed as follows:

1.    **SECURITY GUARD SERVICES AGREEMENT AND TERMS**.  The Owner hereby grants and the Company hereby accepts the right and duty to guard and make secure the property known as the Waffle House unit(s) 258, (the "Property") and to respond within a reasonable time to any and all reasonable security guard service requests made by Owner. Company agrees that with its verbal consent, confirmed by email, other units may be added to the Property and if so will be covered under the terms of this agreement. CH agrees that it will not engage any other security guard or patrol company for the Property while this Agreement is in effect.  This right and duty shall commence on 8-26-2011, and shall remain in effect unless terminated by either party upon 72 hours written notice.  Email correspondence shall qualify as such notice. Notwithstanding this provision, CH or Owner may terminate this Agreement at any time with cause. In the event of such termination, CH will pay the Company for all work properly performed hereunder up to the date of termination.  After such payment CH will have no further obligation or liability to the Company.  The provisions of Paragraphs 2 and 10 will, nevertheless, remain in effect.

2.    **WARRANTIES OF COMPANY**.  The Company represents and warrants that all Guards provided to Owner have met passed and satisfied all the Company's requirements for the type of guard called for at the Property, whether Armed or Unarmed. Company further warrants and represents that Guards provided to Owner are qualified personnel under all applicable federal, state and local laws, regulations and ordinances and that all such personnel have no criminal arrests or convictions, mental or emotional problems known to the Company as evidenced by the employee's medical records or history and are otherwise fit for providing the contracted services. The Company further warrants and represents that the Guards provided to Owner are specifically qualified to provide the required type of guard services for venues such as the Property, and are familiar with and will adhere to the Post Orders (Waffle House Spigot Effect) attached to this agreement.

1

    3.    **TERM/NON-COMPETE.** Company agrees to respect CH's relationship with the Owner and not to compete with CH at the Owner or to do business with the Owner without working through CH during the term of this agreement and for a period of one (1) year following the termination of this Agreement. This shall apply to Owner's operations within the state of Florida.

    4.    **CONSIDERATION/SCHEDULE.** CH agrees to pay the Company the amount of $18.00 per hour for armed guards for their hours worked at the property according to a schedule mutually agreed to by Company and CH and Owner. Company's invoices will be payable within thirty (30) days of receipt. Initial scheduled hours and days that the sites will be manned are specified in a letter to Company. Company agrees that it will not subcontract the services described herein, but in the event that the Company contracts with another company as its agent to perform the services of the Company under this Agreement, the Company agrees that the Owner will have no obligation to pay Company or its subcontractor for such subcontracted service except as may otherwise be required by law.

    5.    **ASSIGNMENT.** This Agreement may not be assigned or transferred by the Company.

    6.    **INDEPENDENT CONTRACTOR.** The individuals used to perform such services as the Company shall provide shall be employees of the Company and not employees or independent contractors of CH or the Owner. The payment of Federal, State and/or local taxes, Social Security benefits, unemployment compensation taxes and wages shall be the sole function and responsibility of the Company.

    7.    **INSURANCE.** Prior to providing the Services, Company shall procure and maintain, at Company's own cost and expense, insurance as provided in this section against claims for injuries to persons or damages to property which may arise out of or result from the performance of the Services by Company, its Subcontractors or Sub-subcontractors, by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. The following policies and coverages shall be furnished by Company unless other policies and limits are agreed to in writing by CH. Commercial General and Umbrella Liability Insurance: Company shall maintain commercial general liability (CGL) and, if necessary, commercial umbrella liability insurance with a limit of not less than $1,000,000 each occurrence. If such CGL insurance contains a general aggregate limit, it shall apply separately to each location. CGL insurance shall be written on Insurance Services Office form CG 00 01 (or substitute form providing equivalent coverage) and shall cover liability arising from premises, operations, independent contractors, personal injury, contractual liability, broad form property damage liability, products-completed operations coverage and X, C, U (explosion, collapse, underground) hazards. Limits may be provided in a "layered" program, by means of primary and umbrella policies. Commercial Automobile and Umbrella Liability Insurance: Company shall maintain commercial automobile liability and, if necessary, commercial umbrella liability insurance with a limit of not less than $1,000,000 each accident. Such insurance shall cover liability arising out of any automobile, including owned, hired, and non-owned automobiles. Coverage shall be written on Insurance Services Office form CA 00 01, CA 00 05, CA 00 12, CA 00 20, or a substitute form providing equivalent liability coverage. If necessary, the policy shall be endorsed to provide contractual liability coverage equivalent to that provided in the 1990 or later editions of CA 00 01. Limits may be provided in a "layered" program, by means of primary and umbrella policies. Workers' Compensation and Employers' Liability Insurance: Company shall maintain workers' compensation insurance as required by the State in which the Services are being performed and employers' liability insurance. The employers' liability limits shall not be less than $100,000 each employee for bodily injury by accident or by disease. The policy limit for bodily injury by disease shall not be less than $500,000. The Commercial General Liability, Workers Compensation and Commercial Automobile Liability policies shall be endorsed to include the following: Copeland Holdings, LLC and Waffle House, Inc. as certificate holders. Company's insurance coverage shall be primary and not contributory insurance with respect to any other insurance or self-insurance programs maintained by CH, Owner, its partners, principals, officers, directors, agents, employees, representative, and insurers. There shall be no endorsement or modification of the CGL to make it excess over other available insurance; alternatively, if the CGL states that it is excess or pro rata, the policy shall be endorsed to be primary with respect to the additional insured. All insurance policies shall be endorsed to state that coverage shall not be canceled except after thirty (30) days prior written notice to Owner. If Company, for any reason, fails to maintain insurance coverage, which is required pursuant to this Agreement, the same shall be deemed a material breach of

this Agreement. CH or Owner, at their sole option, may terminate this Agreement and obtain damages from Company resulting from said breach. Company shall furnish CH with original certificates of insurance effecting coverage required under this Agreement. The certificates of insurance and endorsements for each policy are to be signed by a person authorized by the insurer to bind coverage on its behalf.  All certificates of insurance are to be received and approved by CH before commencement of the Services. CH reserves the right to require complete, certified copies of all required insurance policies, including endorsements affecting the coverage required at any time.

8.      **NEW ASSIGNMENT**.  At the mutual agreement of Company, Owner and CH, an employee of the Company may be assigned duties other than those duties set forth by the Post Orders.

9.      **ADDITIONAL OFFICERS**.  Should a condition arise which calls for substantial increase in the number or degree of services initially estimated, the Company shall have a reasonable time within which to provide said services; and in the event of a strike, walkout, slow-down, or other labor dispute or difficulty by an employee of the Owner or employees of other companies on premises being serviced by employees of the Company, whether contrary to a labor agreement or not, the Owner and the Company agree to negotiate a change in rates as set forth in Paragraph 4 above.

10.     **INDEMNITY**.  Company will indemnify CH and Owner from misconduct or willful misconduct on the part of the Company's employees or agents, including Subcontractors and Sub-subcontractors, if any

11.     **REMOVAL OF GUARDS**.  The Company agrees that upon request by the Owner, it will remove from service hereunder any Guard who, in the opinion of the Owner, is guilty of improper conduct.

12.     **APPROVAL**.  Execution of the Agreement by an authorized officer of each of the parties shall constitute offer and acceptance of its terms, binding upon the parties.

13.     **MISCELLANEOUS**.  Failure of either party to enforce any of the provisions of the Agreement shall not constitute a waiver of rights or subsequent breaches.  This Agreement has been executed in conformity with and shall be governed by the laws of the state in which the Property is located. This Agreement shall inure to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties here to the extent that assignment is authorized under this Agreement.

14.     **ENTIRE AGREEMENT.**   This contract and any documents incorporated specifically by reference represent the entire agreement between the parties and supersede any all prior oral or written statements or agreements. All promises, requirements, terms, conditions, provisions, representations, guarantees, and warrantees contained herein shall survive the contract termination or expiration date unless specifically provided otherwise herein, or unless superseded by applicable Federal or State statutes of limitation.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

3

12. **APPROVAL.** Execution of the Agreement by an authorized officer of each of the parties shall constitute offer and acceptance of its terms, binding upon the parties.

13. **MISCELLANEOUS.** Failure of either party to enforce any of the provisions of the Agreement shall not constitute a waiver of rights or subsequent breaches. This Agreement has been executed in conformity with and shall be governed by the laws of ~~Ohio~~the state in which the Property is located. This Agreement shall inure to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties here to the extent that assignment is authorized under this Agreement.

14. **ENTIRE AGREEMENT.** This contract and any documents incorporated specifically by reference represent the entire agreement between the parties and supersede any all prior oral or written statements or agreements. All promises, requirements, terms, conditions, provisions, representations, guarantees, and warrantees contained herein shall survive the contract termination or expiration date unless specifically provided otherwise herein, or unless superseded by applicable Federal or State statutes of limitation.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

Copeland Holdings, LLC          EMS Protective Group

By: _____    By: _Emanuel Moonan_____
      Authorized Signatory             Authorized Signatory

Title: _President_____       Title: _Owner, Manager_____

Date: _8-23-2011_____       Date: _8/23/2011_____

4

# C H Security Services

### INTEGRITY*HONOR*SERVICE

700 Lake Mist Cove
Alpharetta, GA 30004

Phone: 678-352-9133
Fax: 678-352-9111

## WAFFLE HOUSE

### SECURITY GUARD INSTRUCTIONCARD

I.  Duties inside the restaurant include:
    a) Enforce seating capacity (use Spigot Effect* as needed)
    b) Assist with rowdy customers
    c) Enforce no loitering
    d) Check restrooms every half hour for illegal activity
    e) Be mobile within the restaurant (do not sit or stand in one location all of the time).
    f) Understand what management allows in way of conduct from its customers.
    g) Be courteous to customers, but authoritative.
    h) Know when to call for police assistance.
    i) Help with host/hostess.
    j) Inform management before removing rowdy customers.

II. Duties outside the restaurant include:
    a) Enforce parking capacity of the parking area.
    b) Enforce "NO LOITTERING" ordinances.
    c) Conduct periodic checks of the following areas:
        1. Parking areas       2. Back door area
        3. Dumpster area       4. Rear side of restaurant
    d) Know when to call the local police for assistance.

III. Other:
    a) Security Guard gets free beverage; pays for meals.
    b) Security Guards must not accept cash payment at the restaurant.
    c) Use of force is only permitted to protect your life, a customer, or employee.

*SPIGOT EFFECT: Once the full fire code seating capacity is reached, admit one person for each person that leaves.

# WAFFLEHOUSE, INC.
## SECURITY SERVICES
### AGREEMENT

This Agreement made and enters into this _19th_ day of _February_____ by and
between _Executive Security Serv_ hereinafter called the Contractor and Waffle House, Inc.
hereinafter called the Client.

Witnesseth, that the Contractor and the Client, in consideration of the promises herein contained, and other
good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as
follows:

**I.      SCOPE OF WORK**

The Contractor agrees to provide security services to Client. Security Services shall include
Uniform Security Patrols for the periods and at the location(s) established by the Client set forth in
Attachment "A" hereto, and according to the general guidelines set forth in Attachment "B"
hereto. Assigned personnel will be required to review and acknowledge to contractor their
understanding of the general guidelines, Client's special requirements and other operational
procedures as may be requested by Client due to unique circumstances. Contractor will
immediately replace security personnel not meeting the Client's expectations or satisfaction for
any reason, or no reason, upon Client's request, orally or in writing.

**II.     SERVICES PROVIDED**

Contractor will provide _1-2_  {  } unarmed
                              { ✓ } armed uniformed security officers located at the Unit(s)
listed in the Attachment "A" during the hours set forth in Attachment "A". The Contractor will
provide additional service as described in Attachment "C" attached hereto, if any.

**III.    TERM OF AGREEMENT**

This agreement shall remain in force for a period of ___1 year___ and will be extended for
a like additional period of time unless either party terminates as provided herein. This Agreement
may be terminated at any time by either party, with or without cause. For a termination without
cause to be effective Contractor must give 30 days prior written notice to Client and Client shall
give 14 days written notice to Contractor. Either party may terminate this Agreement immediately
upon the breach of any term or condition hereof, with termination effective upon the giving of
written notice.

*[handwritten margin note:] This agreement shall continue to be renewed year by year in this manner unless terminated by either party. ACFSI*

**IV.     PERFORMANCE**

Contractor shall provide professional, appropriately trained security personnel. Contractor will
provide security personnel with the proper uniform, consisting of police-type shirt, trousers and
badge, or a blazer with coordinated trousers, white shirt and necktie, and any other equipment,
including firearms, in the judgement of Contractor, required by such personnel. Uniform type will
be at the discretion of the Client. The uniform will be worn according to the high appearance
standards representative of the Contractor and the Client. Contractor recognizes that the behavior
and appearance of its security personnel reflect not only on the Contractor, but on the Client as
well, and Contractor gives assurance that uniform standards and a professional attitude and
demeanor will be maintained at all times by all Contractor's personnel.

**V.      COST OF SERVICES**

There will be a single billing rate of $ _19.00-21.00_ per hour, per guard for armed guards and
$ _15.00_ per hour, per guard for unarmed guards.

VI.   **BILLING AND PAYMENT**
Contractor will provide the Client with a weekly invoice billing for all hours worked. All invoices will show each guard's name, hours worked, total hours worked by Contractor's security personnel assigned to Client's premises, the days services were provided, and unit number(s) and location. Payment shall be made within _____ days of invoice billing receipt.

VII.   **INDEPENDENT CONTRACTOR**
The parties agree that Contractor is an independent contractor and that the security personnel to be furnished by Contractor, or Contractor himself if an individual, are not and will not hold themselves out as being employees of Client. The Contractor agrees that the services to be provided by Contractor shall being every respect at the risk of the Contractor. The Contractor agrees to be responsible for any costs associated with Workman's Compensation, Social Security, FICA taxes, state and local taxes and insurance for its personnel. The Contractor agrees to maintain all necessary and required state and or federal licenses, permits and bonds, and furnish the Client with copies of all licenses, permits, bonds and certificates of insurance as required herein.

VIII.   **CONTRACTOR'S RISK AND LIABILITY**
   A.   Contractor shall and hereby does indemnify and hold Client harmless from and against any and all loss, cost and damage to persons or property, including but not limited to attorney fees incurred by Client in investigating and defending any action, arising out of or resulting from actions by Contractor or security personnel furnished to Client hereunder.

   B.   Contractor shall and hereby does indemnify and hold Client harmless from and against any and all loss, cost and damage to persons or property, including but not limited to attorneys fees incurred by Client in investigating and defending any action, incurred by employees or customers of Client on or about Client's premises when security personnel supplied by Contractor were present, which loss, cost or damage a reasonably trained security guard performing his duties in a professional manner would have mitigated or prevented.

   C.   Contractor shall and hereby does indemnify and hold Client harmless from and against any and all loss, cost, damage to persons, property, including but not limited to attorneys fees incurred by Client in investigating and defending any action, incurred by employees or contracted for but not present, which damage a reasonably trained security guard performing his duties in a professional manner would have mitigated or prevented.

   D.   Contractor shall and hereby does indemnify and hold Client harmless from and against any and all loss, cost, damage to Client including but not limited to attorneys fees incurred by Client, incurred or sustained by Client as a result of any breach of any term or condition of this Agreement, or action, inaction, failure to act of Contractor or its personnel described in Sections A, B or C of this Article VIII.

   E.   The Contractor shall indemnify and hold harmless the Client and its personnel from claims under any applicable Worker's Compensation Act incurred by any personnel supplied by Contractor.

IX.   **INSURANCE (EFFECTIVE IF BOX CHECKED)**
   [ ✓ ] The Contractor agrees to maintain a minimum of one million dollars in liability insurance.
   [ ✓ ] Contractor acknowledges that the Units listed in Attachment "A" are within states in which Workers Compensation Acts generally apply to personnel furnished by Contractor, and Contractor agrees to maintain worker's compensation insurance as required by any such state law, ordinance or regulation.

**X.    NOTICES**

Any notice required or permitted to be given pursuant to this Agreement shall be deemed properly given if in writing and personally delivered or deposited postage prepaid, in a regularly maintained receptacle for United States mail, certified mail, return receipt requested, directed to the addresses set forth below the name of the parties at the end of this writing. Addresses for notice purposes may be changed by written notice given in the manner described above for notices.

**XI.    ASSIGNMENT**

This agreement provides for Contractor to perform specialized services for Client hereunder, and therefore Contractor shall not assign its rights hereunder nor delegate its duties (except to its personnel).

**XII.    SUCCESSION**

Except as otherwise expressly provided herein, this Agreement shall be binding upon and inure to the benefits of the parties hereto and there respective legal representatives, heirs, successors and assigns.

**XIII.    GEORGIA LAW**

This Agreement is accepted in and shall be construed and the legal relations between the parties determined in accordance with the laws of State of Georgia.

**XIV.    SEVERABILITY**

If any section, sub section, paragraph or subparagraph hereof is declared invalid by any competent jurisdiction or governmental agency, such invalidity shall not in any manner affect the validity or enforceability of any other section, subsection, paragraph or subparagraph hereof.

**XV.    ENTIRE AGREEMENT; AMENDMENTS**

This writing embodies the entire agreement between the parties hereto relating to the subject matter hereof. No amendment or modification of this Agreement shall be valid or binding unless made in writing and signed by the party against whom enforcement is sought. It is agreed, however that the execution by a representative of the Contractor and Client of additional Attachment "A"s, adding or deleting Units, or expanding or reducing the number of hours for the providing of services at any Unit, may be executed by Contractor and Client, and such amendment should have the full force and effect of this Agreement and become effective as an amendment hereto at the time of execution by both parties.

Signed this 27ᵗʰ day of February, 2003 2007

WAFFLE HOUSE, INC.

By: _Karl Fehr_

5986 Financial Drive
Street Address

Norcross, GA 30071
City, State, Zip

770-729-5925
Telephone Number

Executive Security Services
(Name of Contractor)

By: _____

5115 New Peachtree Rd. Ste 302.
Street Address

Atlanta GA 30341
City, State, Zip

678 630 9133
Telephone Number

## ATTACHMENT "B"

## WAFFLE HOUSE SECURITY GUARD GENERAL GUIDELINES

The following constitutes the general guidelines requested by Client of security personnel at each of its restaurants. These guidelines are suggested to help insure the smooth and effective conduct of Waffle House's business on its premises and the safety and well being of the customers and employees of Waffle House. However, Client has entered into the Security Service Agreement to which this attachment is made a part, because of the expertise of the Contractor. Client relies upon the expertise and judgement of the Contractor in performing professional security services at each of Client's locations.

Inside the restaurant:

a) Enforcing seating capacity (use spigot effect as needed);
b) Assist with rowdy customers;
c) Enforce "NO LOITERING" ordinances;
d) Check restrooms periodically as needed for illegal activity;
e) Be mobile within the restaurant (do not sit or stand at on location all the time);
f) Understand what management allows in the way of conduct from its customers;
g) Be courteous to customers but authoritative;
h) Help host/ hostess;
i) Inform management before removing rowdy customers;
j) Know when to call for police assistance (be familiar with the local precinct number –do not wait till 911 is necessary);

Outside the restaurant:

a) Enforce parking capacity of the parking area;
b) Enforce "No Loitering" ordinances;
c) Conduct periodic checks of the following areas, as needed in the judgement of the security officer:
    1. Parking Areas
    2. Backdoor Areas
    3. Dumpster Areas
    4. Check the off-side (grill vent side) of the unit
d) Know when to call police for assistance (do not wait until 911 is necessary);

Use of force is only permitted to protect life of a customer, the life of the security personnel, and the life of a Waffle House employee.

### ATTACHMENT "A"

## WAFFLE HOUSE SECURITY GUARD POST ORDERS

Police Department/Security Company (Contractor) Executive Security Service

Officer/Supervisor (Contractor Contact) Bob Copeland

Contractor will provide security services as set forth in the Security Services Agreement, 24 hr. contact number 678-642-6443

beginning on the 19th day of February, as follows:

Unit Number 28 Address: 6294 Old Dixie Hwy, Jonesboro, GA 30236

Days Services to be provided:

Hours Services to be provided:     Waffle House Contact: Leslie Scott

Contact No.: 770-961-2722

Unit Number 105 Address: 4852 Old National Hwy, College Park, GA 30337

Days Services to be provided:

Hours Services to be provided:     Waffle House Contact: Valerie Gray

Contact No.: 404-767-4116

Unit Number 412 Address: 2264 CHSHR Bridge Rd NE, Atlanta, GA 30324

Days Services to be provided:

Hours Services to be provided:     Waffle House Contact: Nancy McGwin

Contact No.: 404-634-9414

Unit Number 469 Address: 1815 Industrial Park, Selma, NC 27576

Days Services to be provided:

Hours Services to be provided:     Waffle House Contact: Paul Bracken

Contact No.: 919-965-6342

Unit Number 553 Address: 4995 Old National Hwy, College Park, GA 30349

Days Services to be provided:

Hours Services to be provided:     Waffle House Contact: Curtis Grayer

Contact No.: 404-762-9782

Unit Number 609 Address: 3162 Brockett Rd, Clarkston, GA 30021

Days Services to be provided:

Hours Services to be provided:     Waffle House Contact: David Miller

Contact No.: 770-934-6817

SIGNED, this 27th day of February 2003. 2007

WAFFLE HOUSE, INC.

By: _____

Its VP - Security

5986 Financial Drive
Norcross, GA 30071

Contractor

By: _____

Its President

Address: 5115 New Peachtree Rd, Ste 302

Atlanta GA 30341

### ATTACHMENT "A"

### WAFFLE HOUSE SECURITY GUARD POST ORDERS

Police Department/Security Company (Contractor) Executive Security Service

Officer/Supervisor (Contractor Contact) Bob Copeland

Contractor will provide security services as set forth in the Security Services Agreement, beginning on the 19th day of February as follows: 24 hr. contact number 678-642-6493

Unit Number 1172 Address: 1700 Howell Mill Rd Atlanta, GA 30318
Days Services to be provided: _____
Hours Services to be provided: _____ Waffle House Contact: Rashaad Ali
Contact No.: 404-351-0172

Unit Number 1193 Address: 2057 Gordon Hwy, Augusta, GA 30909
Days Services to be provided: _____
Hours Services to be provided: _____ Waffle House Contact: Marquan Glover
Contact No.: 706-736-1469

Unit Number 1389 Address: 2000 Wayne Memorial Dr, Goldsboro, NC 27534
Days Services to be provided: _____
Hours Services to be provided: _____ Waffle House Contact: Shannon Greene
Contact No.: 919-581-9677

Unit Number 1621 Address: 1629 Gordon Hwy, Augusta, GA 30906
Days Services to be provided: _____
Hours Services to be provided: _____ Waffle House Contact: Ivan Coleman
Contact No.: 706-798-5596

Unit Number 1726 Address: 2581 Piedmont Rd NE, Atlanta, GA 30324
Days Services to be provided: _____
Hours Services to be provided: _____ Waffle House Contact: Lazarus Mason
Contact No.: 404-869-9215

Unit Number _____ Address: _____
Days Services to be provided: _____
Hours Services to be provided: _____ Waffle House Contact: _____
Contact No.: _____

SIGNED, this 27th day of February 2005 2007

WAFFLE HOUSE, INC.

By: _____

Its VP-Security

5986 Financial Drive
Norcross, GA 30071

Contractor

By: _____

Its President

Address: 515 New Peachtree Rd.
Ste 302 Atlanta GA 30341

At Waffle House request additional units may be added to this list as required. Acceptance of the service request by Executive whether verbal or written shall be sufficient to include the service within the scope of the contract.

Control No. **0248515**

# STATE OF GEORGIA

## Secretary of State

### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Drive
### Atlanta, Georgia 30334-1530

# CERTIFICATE
# OF
# AMENDMENT
## NAME CHANGE

I, **Brian P. Kemp**, the Secretary of State and the Corporations Commissioner of the State of Georgia, hereby certify under the seal of my office that

### COPELAND HOLDINGS, LLC
#### a Domestic Limited Liability Company

has filed articles/certificate of amendment in the Office of the Secretary of State on 11/14/2011 changing its name to

### CH SECURITY SERVICES, LLC

and has paid the required fees as provided by Title 14 of the Official Code of Georgia Annotated. Attached hereto is a true and correct copy of said articles/ certificate of amendment.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on November 14, 2011

Brian P. Kemp
Secretary of State



Brian P. Kemp
Secretary Of State

**Office Of The Secretary Of State**
**Corporations Division**

**Articles Of Amendment**

**To Articles of Organization**

Control No: 0248515
Date Filed: 11/14/2011 08:00 AM
Brian P. Kemp
Secretary of State

RECEIVED
SOS/PLB ACCOUNTING
2011 NOV 14 PM 2:58

---

**Article One**

The Name Of The Limited Liability Company Is:

Copeland Holdings, LLC

**Article Two**

The Date The Articles Of Organization Were Filed Was:

09-24-2002

**Article Three**

The Limited Liability Company Hereby Adopts The Following Amendment To Change The Name Of The Organization. The New Name Of The Organization Is:

C.H. Security Services, LLC

IN WITNESS WHEREOF, the undersigned has executed these Articles Of Amendment

On 11-08-2011
(Date)

Robert F Copeland, Member Manager
(Signature And Capacity in which signing)

Form CD 110

---

State of Georgia
Name Change 1 Page(s)

T1131908252

**COPELAND HOLDINGS, LLC**

ORGANIZED UNDER THE LAWS OF THE STATE OF GEORGIA

49%

2

THIS CERTIFIES THAT _____ ROBERT F. COPELAND _____ is the registered owner of a _____ FORTY NINE _____ percent interest in the above Limited Liability Company transferable only on the books of the Company in accordance with the Company's Operating Agreement.

IN WITNESS WHEREOF, the said Company has caused this Certificate to be signed by a duly authorized member and its seal to be hereunto affixed this 1st day of January, 2004.

MEMBER

**COPELAND HOLDINGS, LLC**

ORGANIZED UNDER THE LAWS OF THE STATE OF GEORGIA

3

51%

THIS CERTIFIES THAT _____ KATHY S. COPELAND _____ is the registered owner of a _____ FIFTY ONE _____ percent interest in the above Limited Liability Company transferable only on the books of the Company in accordance with the Company's Operating Agreement.

IN WITNESS WHEREOF, the said Company has caused this Certificate to be signed by a duly authorized member and its seal to be hereunto affixed this 1ST day of January , 200 4 .

_____
MEMBER